# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

United States of America,

    Plaintiff,

v.

Alon Russell,

    Defendant.

Case No. 1:18cr80

Judge Michael R. Barrett

## OPINION & ORDER

This matter before the Court upon Defendant Alon Russell's Motion for Reconsideration. (Doc. 40). The United States has filed a Response in Opposition. (Doc. 45). On May 14, 2019, a hearing was held on the Motion for Reconsideration.

### I. BACKGROUND

The United States has brought one count against Defendant: possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 18 U.S.C. § 2. Defendant moved to suppress evidence obtained in a search of the garage of a house on Darbyshire Road in Wilmington, Ohio. Defendant was living in the garage at the time of the search. This Court denied Defendant's Motion to Suppress. (Doc. 29). The factual background was previously set forth more fully in the Court's Order on the Motion to Suppress; and therefore the same shall not be repeated here.

Defendant argues that the Court erred in finding there was voluntary consent to search provided by someone with actual or apparent authority.

### I. ANALYSIS

#### A. Motion for reconsideration

The Federal Rules of Criminal Procedure do not provide for a motion to reconsider. *United States v. Hopewell*, No. 1:08-cr-65, 2009 WL 1026452, at *1 (S.D. Ohio Apr. 15, 2009). Instead, "[c]ourts adjudicating such motions in criminal cases typically evaluate such motions under the same standards applicable to a civil motion to alter or amend judgment pursuant to Fed.R.Civ.P. 59(e)." *Id.* (quoting *United States v. Jarnigan*, No. 3:08–CR–7, 2008 WL 5248172, at *2 (E.D. Tenn. Dec. 17, 2008)). There are three grounds for amending a judgment under Rule 59: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Leisure Caviar, LLC v. United States Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). Defendant argues that in denying his Motion to Suppress, the Court committed a clear error of law and reconsideration is necessary to prevent manifest injustice.

**B. Fourth Amendment**

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Warrantless searches and seizures "are per se unreasonable . . . subject only to a few specifically established and well delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One exception to the warrant requirement is "a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (citing *Davis v. United States*, 328 U.S. 582, 593-94 (1946)). "Consent to enter need not be explicit." *Smith v. City of Wyoming*, 821 F.3d 697, 709 (6th Cir. 2016). It "may be given in the form of words, gesture or conduct." *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc).

In its Order denying Defendant's Motion to Suppress, the Court noted that Defendant did not raise an argument regarding consent to Sergeant Rager's initial entry into the home. (Doc. 29, PAGEID# 148). Nevertheless, the Court found that there was sufficient evidence of consent to his initial entry into the home. (Doc. 29, PAGEID# 149). Defendant now challenges that conclusion, and also argues that there was not voluntary consent given to Sergeant Rager to enter the house a second time after Defendant was placed in the back of a police cruiser.

At the outset, the Court again notes that Defendant never expressly refused consent to allow Sergeant Rager to enter the home or search the garage.[1] In certain circumstances, a third party— a person other than the defendant—can validly consent to a search of the defendant's home. *United States v. Matlock*, 415 U.S. 164, 169, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) ("[T]he voluntary consent of any joint occupant of a residence to search the premises jointly occupied is valid against the co-occupant."). The third party's ability to consent to such a search rests on his or her "joint occupation" of and "common authority" over the premises. *Fernandez v. California,* 571 U.S. 292, 299, 134 S. Ct. 1126, 188 L. Ed. 2d 25 (2014). In addition, depending on the circumstances, an officer may rely on the apparent authority of a person consenting to a search. *Illinois v. Rodriguez*, 497 U.S. 177, 188-89, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148, 156 (1990). Apparent authority arises when a third party (1) does not possess actual authority to consent but appears to have such authority and (2) the law enforcement officer reasonably relied, from an objective perspective, on that appearance of authority. *Id*. at 185-89.

---

[1]Under the rule set forth in *Georgia v. Randolph*, "a physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant." 547 U.S. 103, 122-23, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006). However, this rule "applies only when the objector is standing in the door saying 'stay out' when officers propose a consent search." *Fernandez*, 134 S.Ct. at 1136. Because Defendant never expressly refused consent to have Sergeant Rager enter the house and Defendant was not physically present when Sergeant Rager entered the garage, the *Randolph* rule does not apply.

Sergeant Rager testified that there were approximately eight adults and children in the home. (Doc. 25, PAGEID# 86). Even if the adults present in the house on Darbyshire Road lacked actual authority to consent to the search, the Court finds that they had apparent authority; and it was reasonable for Sergeant Rager to believe that those adults had authority to consent to the search.

When Sergeant Rager arrived at the house on Derbyshire Road, he first spoke to a young boy holding a basketball. (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 0:48). The boy asked, "Do you need someone?" (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 0:49). Sergeant Rager asked him if his mom or dad were here. (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 0:50). The boy responded, "My mom is not here, but [inaudible]," and ran into the house. (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 0:48). It is clear from this interaction that the boy was going into the house to find someone to talk to Sergeant Rager. When Sergeant Rager reached the front door of the house, a female came out of the house. (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 1:32). This female was later identified as Savannah New. Sergeant Rager explained that there was a report of people fighting. (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 1:36). New told Sergeant Rager that the people who were fighting were in the garage. (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 1:40). Rager asked how to get into the garage, and New showed him to a door inside the house that led to the garage. (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 1:40 to 1:56). As he followed New inside, Sergeant Rager asked her what the house number was. (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 1:50). At that point, New told Sergeant Rager that this was not her house, but it belonged to "Christy" who was not home. (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 1:57, 2:17). A man who was in the living room of the house confirmed that the two people who were fighting were now in the garage. (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 2:30). Sergeant Rager knocked on the door of the garage, and

Defendant came to the door. (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 2:34 to 2:42). Sergeant Rager asked Defendant if he lived here, and he responded, "I stay here with friends." (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 2:59). Sergeant Rager asked Defendant to walk outside and talk. (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 3:05). Defendant refused to go outside, and said, "talk to me here, man." (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 3:16). Defendant then starting yelling and told New and the man in the living room, that "somebody should call somebody, because I didn't do nothing." (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 3:57). Defendant asked them, "where is she, the house lady?" (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 0:48). New responded, "she's not here." (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 0:48). Defendant walked towards the back of the house yelling for the "house lady." (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 4:07). New then said, "Christy's gone." (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 4:10). Sergeant Rager followed Defendant as he continued walking and walked out the back door. (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 4:13). The video shows two people working on a lawnmower in the back yard and at least three children playing on the deck. (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 4:16). Defendant walked out into the yard while yelling, "where's the house lady?" (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 4:19). The video shows that Defendant approached the three adults in the yard, but none of the adults responded to Defendant. As he walked back inside the house, Defendant repeated, "somebody call somebody." (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 4:33). Defendant continued to ignore Sergeant Rager's directions to walk outside. (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 4:45). By this time, a second officer had arrived and can be seen inside the house. (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 4:57). As Defendant continued to resist going outside, and yelling that he had done nothing wrong, the man in the living room stood by, trying to ignore Defendant and looking at his phone. (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 5:02).

After Defendant was placed in handcuffs and put in the back of the cruiser, Sergeant Rager spoke to Jennifer Alston, who explained that she was Defendant's fiancé, and she and Defendant had been arguing since 4:00 in the morning. (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 8:10). After gathering information from Alston and checking on Defendant, Sergeant Rager began walking back towards the house. (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 12:49). As Sergeant Rager reached the front door, two of the men came outside. (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 13:20). Sergeant Rager asked again, "who's house is this?" (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 13:21). One of the men told him, "Christy," but explained that she was not here. (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 13:24). Officer Rager, asked them "where is that little white girl I talked to when I first walked in?" (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 13:26). One of the men called for Savannah. (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 13:28). Savannah came to the front door holding a baby. (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 13:29). Officer Rager asked New for her name, she responded, and then Officer Rager walked past her to go into the garage. (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 13:32). Alston followed Officer Rager into the garage. (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 13:41). Officer Rager began asking Alston about the backpack Defendant had left behind. (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 13:45). Alston stated the backpack was hers. (Doc. 25, PAGEID# 82; Gov't Exh. 2 at 13:45). Officer Rager looked into the partially unzipped backpack and could see part of a pistol grip. (Doc. 25, PAGEID# 89). Sergeant Rager removed it from the garage and took it outside in order to maintain control of the area. (Doc. 25, PAGEID# 91).

At no time did Defendant use the names of any of the adults in the house, which would indicate he knew who they were. At no time did anyone in the house tell Sergeant Rager that he did not have permission to come into the house or garage. Instead, Sergeant Rager's bodycam video shows the adults in the house cooperating with Sergeant Rager, answering his questions, and

stepping out of his way to allow him into the house. The Court finds that these actions demonstrate consent. *Accord United States v. Ortiz*, 455 F. App'x 669, 671–72 (6th Cir. 2012) (finding that under the circumstances, stepping back, gesturing, and opening the door wider unambiguously conveyed assent).

The Court notes that this was not the first time that Sergeant Rager had been called to this house on Darbyshire Road to remove someone. At the hearing on the Motion to Suppress, Sergeant Rager testified as follows:

> Q. Have you responded to this house before?
>
> A. Yes.
>
> Q. On what type of calls?
>
> A. Usually it's the lady that owns the house wants somebody removed for disturbances, loud arguing.
>
> Q. About how many times had you responded to that house before?
>
> A. Oh, I've probably been there five times.

(Doc. 25, PAGEID# 81).

The Court also notes that the adults present in the house on Darbyshire had the right to invite Officer Rager to conduct a search. As the Supreme Court has explained:

> . . . the lawful occupant of a house or apartment should have the right to invite the police to enter the dwelling and conduct a search. Any other rule would trample on the rights of the occupant who is willing to consent. Such an occupant may want the police to search in order to dispel "suspicion raised by sharing quarters with a criminal." 547 U.S., at 116, 126 S.Ct. 1515; *see also Schneckloth*, 412 U.S., at 243, 93 S.Ct. 2041 (evidence obtained pursuant to a consent search "may insure that a wholly innocent person is not wrongly charged with a criminal offense"). And an occupant may want the police to conduct a thorough search so that any dangerous contraband can be found and removed.

*Fernandez*, 571 U.S. at 307.

Therefore, the Court finds that under the circumstances, Sergeant Rager's initial entry into the house or the subsequent search of its garage did not violate the Fourth Amendment.

### III. CONCLUSION

Based on the foregoing, Defendant Alon Russell's Motion for Reconsideration (Doc. 40) is **DENIED**.

**IT IS SO ORDERED.**

                                          */s/ Michael R. Barrett*
                                          Michael R. Barrett, Judge
                                          United States District Court